IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**STEPHEN MULLER** and
**RENA MULLER,**

No. 3:14-cv-01345-MO

          Plaintiffs,

OPINION AND ORDER

   v.

**COUNTRY MUTUAL
INSURANCE CO.**

        Defendant.

**MOSMAN, J.,**

This matter comes before me on Plaintiffs Rena and Stephen Muller's ("the Mullers")

Motion for Attorney Fees [266]. For the reasons stated below, I GRANT in part and DENY in

part the Motion.

## BACKGROUND

This case arises out of a fire in 2012, in which the Mullers' house, business (machine

shop), and 1967 Mustang were all damaged. After investigation, Country Mutual denied the

Mullers' claim, concluding that the Mullers had intentionally started the fire. The Mullers

brought suit in August 2014 and sought recovery for breach of express contract.[1] [1].

---

[1] The Mullers originally brought a claim for breach of the implied covenant of good faith and fair dealing,
but voluntarily dismissed this claim before trial.

Their claims culminated in an eight-day jury trial in June 2017. The jury found for the Mullers on their breach of contract claim and awarded damages of $1,082,500. [246]. These damages include $186,000 in damages related to structures, $570,000 in damages related to business property, $256,500 in damages related to personal property, $25,000 in damages related to business income, and $45,000 in damages related to automobiles. [246].

The Mullers seek: (1) an award of prejudgment interest in the amount of $428,290.63, plus the daily rate through entry of judgment; (2) $1,175,568.49 in attorney fees, supplemental fees of $33,146.25 incurred to respond to the Motion for a New Trial and for the reply, $8,000 in expert fees, plus a 2.0 multiplier; and (3) $31,076.29 in costs.

## DISCUSSION

### I. Prejudgment Interest

The Mullers seeks an award of prejudgment interest in the amount of $428,290.63. Motion [266] at 2. Country Mutual does not dispute that the Mullers are entitled to prejudgment interest but disagrees with the Mullers about the date prejudgment interest began to accrue. Response [284] at 2–3.

Oregon Revised Statute Section 82.010, which governs prejudgment interest in this case, allows for prejudgment interest at a rate of "nine percent per annum [that] is payable on [a]ll moneys after they become due." O.R.S. § 82.010(1). "Prejudgment interest is proper when the exact amount owing is ascertained or easily ascertainable by simple computation or by reference to generally recognized standards and where the time from which interest must run can be ascertained." *Gerber v. O'Donnell*, 724 P.2d 916, 918 (Or. Ct. App. 1986). "Oregon courts [have] adopted an approach where prejudgment interest is appropriate notwithstanding that a defendant disputed liability and the jury did not award plaintiff all the damages it sought or where 'damages are not ascertainable until issues of fact have been decided by the jury.'"

2 – OPINION AND ORDER

*Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1258 (D. Or. 2013) (quoting *Strader v. Grange Mut. Ins. Co.*, 39 P.3d 903, 909 (Or. Ct. App. 2002)).

This Court determined in *Precision Seed Cleaners* that losses from a fire became ascertainable on the date the Mullers submitted proof of loss to the defendant insurance company. *Id.* at 1264. Pursuant to O.R.S. § 742.238, which requires fire insurers to pay for covered losses within sixty days after proof of loss, the Court concluded the "due date" for the money was sixty days after the proof of loss was submitted. *Precision Seed Cleaners*, 976 F. Supp. 2d at 1264; O.R.S. § 742.238 ("A fire insurance policy shall contain a provision as follows: 'The amount of loss for which this company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this company and ascertainment of the loss is made either by agreement between the insured and this company expressed in writing or by the filing with this company of an award as herein provided.'"). Based on *Precision Seed Cleaners*, the Mullers argue that prejudgment interest began to accrue sixty days after the Mullers reported the amounts of loss to Country Mutual, Motion [266] at 3–4, and I agree.

Country Mutual's arguments to the contrary are unpersuasive. Country Mutual argues that prejudgment interest did not begin to accrue until the date of the verdict: because the Court excluded the Mullers' proof of loss from trial, "there was no clarity as to the amount of damages" until trial. Response [284] at 2–3. But this argument does not comport with *Strader* and other Oregon decisions which hold that "although there are questions of fact about the amounts owed, that does not mean that defendant did not owe sums certain at dates certain." *Strader*, 39 P.3d at 909 (quoting *Hazelwood Water Dist. v. First Union Mgmt.*, 715 P.2d 498 (Or. Ct. App. 1986)). Country Mutual also argues the damages were not ascertainable until the verdict because the Court excluded the proof of loss from trial. But the Court excluded the proof of loss

based on hearsay and failure to disclose [223, 250], not because the amounts were
unascertainable, and other proof of damages was introduced at trial. In the alternative, Country
Mutual argues that the accrual date was six months after proof of loss was submitted on June 27,
2013, based on an Oregon statute on attorney fees in insurance cases. Response [284] at 2–3.
However, Country Mutual does not provide any cases in support of its proposition that the statute
on attorney fees also governs prejudgment interest, and I agree with the Mullers that the Court
should follow *Precision Seed Cleaners* and calculate the prejudgment interest from an accrual
date of sixty days after the proof of loss.

But I disagree with several of the Mullers' calculations of accrual dates and prejudgment
interest. The Mullers calculate that prejudgment interest began to accrue on the following dates:
January 20, 2013 (structure, business property, and business income losses); February 2, 2013
(automobile losses); and August 27, 2013 (personal property losses). Motion [266] at 3–4. With
the exception of the personal property losses, none of the other accrual dates proposed by the
Mullers are based on the date the sworn proof of loss was submitted. O.R.S. § 742.238 states that

[A] fire insurance policy shall contain a provision as follows: 'The amount of loss
for which this company may be liable shall be payable 60 days after *proof of loss,
as herein provided,* is received by this company and ascertainment of the loss is
made either by agreement between the insured and this company expressed in
writing or by the filing with this company of an award as herein provided.

O.R.S. § 742.238 (emphasis added).[2] The policies in this case required a sworn proof of loss,
which was submitted on June 27, 2013. [93, 150-3].

I therefore calculate prejudgment interest for the entire amount from sixty days after June

27, 2013 and grant prejudgment interest in the amount of $386,563.40.

---

[2] The Oregon Supreme Court has concluded that "proof of loss," as used separately in O.R.S. § 742.061,
need not be written or signed. *Parks v. Farmers Ins. Co. of Or.*, 227 P.3d 1127, 1131 (Or. 2009). But the
Court specifically noted that state law addressing fire insurance (presumably O.R.S. § 742.238) imposes
more detailed proof of loss requirements. *Id.*

## II.  Attorney Fees

### A. *Entitlement to attorney fees*

Oregon law governs whether attorney fees are available in this case. *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the Erie doctrine . . . ."). The parties do not dispute that the Mullers are entitled to attorney fees under O.R.S. § 742.061. Under O.R.S. § 742.061, the Court "shall" award attorney fees if: (1) the Mullers submitted proof of loss; (2) Country Mutual did not settle within six months of the proof of loss; (3) the Mullers filed a lawsuit; and (4) the Mullers' recovery "exceeds the amount of any tender made by the defendant in such action." O.R.S. § 742.061(1). Here, the Mullers meet each of these criteria: they submitted proof of loss on June 27, 2013; Country Mutual did not settle within six months; the Mullers filed a lawsuit; and Country Mutual never offered more than $600,000 to settle, but the Mullers recovered over $1 million at trial.

### B.  *Amount of fees*

Oregon courts generally award attorney fees based on the lodestar method, under which courts multiply the reasonable number of hours spent on the case by a reasonable hourly rate. *See* O.R.S. § 20.107(2); *Strawn v. Farmers Ins. Co. of Or.*, 297 P.3d 439, 447-48 (Or. 2013) ("*Strawn I*"). The lodestar may be adjusted based on the factors specified in O.R.S. § 20.075. *Alexander Mfg., Inc. Employee Stock Ownership & Tr. v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1181 (D. Or. 2010). O.R.S. § 20.075 requires courts to undertake a two-part inquiry when assessing the amount of attorney fees to be awarded in a case such as this one where attorney fees are required by statute. O.R.S. § 20.075. First, the Court must consider:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under O.R.S. 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

O.R.S. § 20.075(1). Second, the Court must consider:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

O.R.S. § 20.075(2).

The Mullers seek $1,175,568.49 in attorney fees, supplemental fees of $33,146.25

incurred to respond to the Motion for a New Trial and for the Reply in support of their Motion

for Attorney Fees, $8,000 in expert fees, and a 2.0 multiplier.[3] Reply [291] at 10. Defendants

argue the Court should reduce the requested award because the hourly rates for the Mullers'

counsel are excessive, the record shows duplicative and redundant billing, and Country Mutual's

conduct was appropriate in this case. Response [284].

### 1. Subsection (1) factors

The Mullers argue that the applicable factors of subsection (1) weigh in favor of granting

their requested attorney fees. In particular, the Mullers argue the conduct of Country Mutual and

its attorneys under factors (a), (b), (d), (e), and (f) weighs in their favor. The Mullers offer

examples of Country Mutual's allegedly bad conduct. These include refusing to pay for the fire

loss, falsely accusing the Mullers of arson, failing to tell the Mullers it suspected arson until after

its investigation was complete and the scene was destroyed, and refusing to settle. Motion [266]

at 10, 12. Country Mutual argues it was allowed to investigate the cause of the fire and followed

standard industry practices in so doing, and that it consistently participated in settlement

discussions. Response [284] at 6–7, 9.

As to litigation conduct, the Mullers argue Country Mutual and its attorneys (1) did not

prepare its representatives to testify; (2) withheld documents; (3) did not specifically identify its

experts' opinions; (4) filed a Motion to Certify or Reconsider the Court's grant of summary

judgment to the Mullers on one of Country Mutual's affirmative defenses; (5) informed the

Court before the trial began that it intended to file an appeal after trial; (6) used an expert opinion

Country Mutual had earlier disclosed; (7) required the Mullers to authenticate videotape

evidence; (8) presented defenses that were unreasonable because law enforcement refused to

press charges for arson; (9) attempted to introduce inadmissible evidence and arguments in its

---

[3] The Mullers originally asked in their Motion for $1,221,880.24 plus a 2.0 multiplier, but note in the Reply they failed to properly take a 15% deduction from one law firm's fees. Reply [291] at 10.

closing statements; and (10) contacted Mr. Muller's daughter post-trial. Motion [266] at 5–6, 10–12. The Mullers note this Court previously awarded fees against Country Mutual to deter it and other insurers from similar conduct. Motion [266] at 10 (citing *Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-CV-00879-AC, 2016 WL 4978411 (D. Or. Sept. 16, 2016)). Country Mutual argues the Mullers inappropriately attack Country Mutual's attorney, Dan Thenell, and that their arguments are not relevant to the fee petition. Response [284] at 8. Country Mutual further argues its defenses were reasonable and it was proper to assert issues of appeal. Response [284] at 6–7.

I find the majority of allegedly bad conduct of Country Mutual and its attorneys was aggressive but not unreasonable. For example, it was appropriate for Country Mutual to investigate the fire, participate in settlement discussions (and offer as much as $600,000 to settle), present defenses based on evidence and its policy, and seek out new evidence after trial. On the other hand, I note that Judge Brown already concluded in this case that Country Mutual failed to adequately prepare its corporate designee and awarded attorney fees on the matter. [91].

I conclude the applicable subsection (1) factors are relevant in my decisions (1) whether the number of hours spent on this litigation was reasonable and (2) whether to grant a multiplier, which I discuss in detail below.

## 2. Subsection (2) factors

The three main factors at issue here are the contingent or fixed nature of fees, the submitted hours, and the requested hourly rates. That the Mullers received more in damages at trial than they had originally asked for is also relevant. The other factors do not affect my analysis.

### a) Subsection (h): whether the fee of the attorney is fixed or contingent.

The Mullers retained their first attorney, Mr. Bonaparte, on a contingent basis prior to filing suit, but then entered into a fixed hourly rate agreement from August 2014–2015. Motion [266] at 14. In August 2015, the Mullers and their attorneys again entered into a contingency agreement. Motion [266] at 14. Country Mutual argues there was a low risk that Plaintiffs would not be fully compensated. Response [284] at 10. In *Precision Seed Cleaners*, this Court concluded that "while Plaintiff took the case on a contingency basis, once six months passed without a settlement offer of any kind from Defendant, Plaintiff knew that if it settled for any amount whatsoever, it would be entitled to attorney fees under O.R.S. 742.061, reducing the impact of the contingent nature of the case." *Precision Seed Cleaners*, 976 F. Supp. 2d 1 at 1243. I similarly conclude this factor does not weigh in either party's favor.

### b) Subsection (a): the time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

The Mullers argue this case is not "exceptionally complex" but was instead made unnecessarily expensive by Country Mutual's conduct. Motion [266] at 12. The three law firms involved in this case submitted a total of 3718.15 hours of billed time (prior to the Motion for Attorney Fees) over the almost four years spent on this case. Jonas Ricker's law firm submitted 70.4 hours; Maloney Lauersdorf & Reiner submitted 2831.65 hours (including the 30.9 hours included in Judge Brown's award), and Bonaparte's law firm submitted 816.1 hours. [267-8, 267-9, 278-1, 269].

The Mullers reduced the hours submitted by the Bonaparte and Maloney law firms by 15% to account for redundancies. Motion [266] at 12. The Mullers did not discount the 70.4 hours submitted by Jonel Ricker's law firm and do not give an explanation. Reply [291] at 10.

9 – OPINION AND ORDER

Country Mutual argues the Mullers incurred excessive and duplicative fees because they employed six attorneys and numerous paralegals at three different law firms, billed for administrative tasks, and included fees already awarded. Response [284] at 10. I address Country Mutual's four specific objections and one additional issue below.

### i. Anthony Reiner's hours

In the Motion for Attorney Fees, the Mullers do not address or ask for fees for the work done by Anthony Reiner, but 8.5 hours of his work are included in their attorney fee calculations. I suspect Anthony Reiner is a named partner at Maloney Lauersdorf & Reiner, but the Mullers put forth no evidence of his background, skills, or reasonable hourly rates, or even any evidence that he is an attorney. *See, e.g.*, Lauersdorf Decl [267]; McDermott Decl. [271]. I deduct 8.5 hours from the total hours requested for this reason.

### ii. Country Mutual's objections

Country Mutual objects to 888.3 hours[4] claimed in the fee petition. Their objections may be categorized as follows:

- Intra-office communications. Response [284] at 13 (citing to 267-8, 267-9, 278-1).
- Duplicative, redundant, or excessive hours. Response [284] at 14 (citing to 267-8, 267-9).
- Fees already awarded by Judge Brown. Response [284] at 14.
- Administrative tasks. Response [284] at 15.

The Mullers respond that they have already accounted for redundancies by reducing their fees by 15% and that 135.5 of the hours Country Mutual objects to have already been deducted as a "no charge" time entry. Reply [291] at 6. As an initial note, the Mullers are correct they did not charge for many of the hours Country Mutual objects to in their billed hours. I address each of these objections in turn.

---

[4] In its Response [284], Country Mutual calculates that it objects to 971.5 hours, but the supporting affidavit from Dan Thenell objects to 888.3 hours.

## a. Intra-office communications

Country Mutual objects to intra-office communications between the three law firms involved in this case. "A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-CV-00239-HZ, 2014 WL 837389, at *5 (D. Or. Mar. 3, 2014), *aff'd*, 649 F. App'x 585 (9th Cir. 2016) (citations omitted). "Generally, when attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1252 (citation and internal quotation marks omitted); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (upholding district court's finding under federal law that intra-office conferences were "unnecessary and duplicative"). Some courts have strictly applied this rule, concluding that "in general, two attorneys cannot bill for communicating with each other, as such time is duplicative and unnecessary." *Tarango v. City of Bakersfield*, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *11 (E.D. Cal. Nov. 20, 2017) (applying federal and California law).

County Mutual objects to two general types of communications between attorneys: preparation and review of correspondence to co-counsel, and attorney conferences. By my count, there are 28.1 hours of billed time for preparation and review of correspondence to co-counsel. In my mind, this is not excessive for a case with over 3600 hours of billed time, and I do not deduct this time. There are also 88.2 hours of billed time for attorney and/or legal staff conferences, but only 65.2 hours are double-billed. I therefore deduct 32.6 hours for double-billed meetings from the submitted hours of all attorneys and staff except Robert Bonaparte, the attorney with the highest hourly rate. *See Precision Seed Cleaners*, 976 F. Supp. 2d at 1252.

### b. Duplicative, redundant, or excessive hours

Country Mutual objects to other hours billed for duplicative or excessive work. In particular, Country Mutual objects to the combined trial preparation and attendance of Lauersdorf, Maloney, Scott McLaren, Anthony Reiner, and paralegals Katie Walsh and Cher Vasquez. But Lauersdorf and Maloney both substantively participated in the trial, Reiner's time was not billed, MacLaren's time was billed at a paralegal rate, and only one paralegal attended the trial at a time. I therefore do not deduct any hours billed for trial.

In addition, Country Mutual objects to 557.9 hours of duplicative and/or excessive work other than the meetings and correspondence discussed above. But that number of hours is relatively close to a 15% reduction in total hours (approximately 543 hours). I will therefore impose a 15% reduction on the hours of Jonel Ricker's law firm, because the Mullers did not already do so, and do not otherwise reduce the hours for duplicative or excessive work.

### c. Hours for fees already awarded

Country Mutual objects to the hours submitted that were already included in Judge Brown's Order on attorney fees arising out of a Rule 30(b)(6) dispute [91]. The Mullers respond that they included these hours so as to be part of the final judgment and that some of them are "no charge" hours.

Judge Brown awarded the following fees:

| Attorney | Hours | Rate | Fees |
|----------|-------|------|------|
| Andy Lauersdorf | 9.1 | $350 | $3,185 |
| FJ Maloney | 5.2 | $350 | $1,820 |
| Scott MacLaren | 16.6 | $210 | $3,486 |
| **TOTAL** | 30.9 | | $8,491 |

To ensure there is no confusion, I include these 30.9 hours as a separate category in the judgment and deduct these hours from this order.

### d. Administrative tasks

Country Mutual objects to time billed for clerical tasks. "Tasks which are clerical in nature are not properly billed as attorney fees but are overhead expenses absorbed by counsel." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1251. "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling Sav. Bank v. Sequoia Crossing, LLC*, No. 03:09–cv–00555– AC, 2010 WL 3210855, at *7 (D. Or. Aug. 11, 2010). Oregon courts generally only allow the costs of daily trial transcripts to be awarded under costs, not under attorney fees. *See Masood v. Safeco Ins. Co. of Or.*, 393 P.3d 277, 279 (Or. 2017) (addressing costs of daily trial transcripts under Oregon law on allowable costs).

I deduct 31.5 hours for administrative tasks, which consists of 6.7 hours for scheduling, 12.8 hours for organizing files, and 12 hours for a paralegal to record trial testimony and provide transcripts.

In summary, I deduct 32.6 hours for double-billed hours, 31.5 hours for administrative tasks, and 30.9 hours already included in Judge Brown's hour (although these hours are included in the final judgment). This leaves a remainder of 3613.85 hours (prior to the 15% reduction).

### c) Subsections (c) and (g): the fee customarily charged in the locality for similar legal services and the experience, reputation and ability of the attorney performing the services.

"As a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic

Survey." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1244. "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey." *Prison Legal News v. Umatilla Cty.*, No. 2:12-CV-01101-SU, 2013 WL 2156471, at *4 (D. Or. May 16, 2013) (citation omitted).

The Mullers seek the following hourly rates for their attorneys and legal staff:

| **Name** | **Position** | **Hourly Rate (April 2014 through August 2015)** | **Hourly Rate (September 2015 through present)** |
|---|---|---|---|
| Robert Bonaparte | Attorney | $375/$450 | $450 |
| Andrew C. Lauersdorf | Attorney | $375 | $450 |
| Francis J. Maloney | Attorney | $375 | $450 |
| Janis C. Puracal | Attorney | $275 | $300 |
| Scott MacLaren | Attorney | $185 | $250 |
| Jonel Ricker | Attorney | $210 through 2013, $225 thereafter | $225 |
| Brooke Calcagno | Paralegal | $120 | $150 |
| Cher Vasquez | Paralegal | $120 | $150 |
| Katie Welsh | Paralegal | $120 | $150 |
| Robin Lister | Legal Assistant | $95 | $95 |
| Nadya Okamoto | Legal Assistant | $100 | $100 |
| Isabelle Zheng | Legal Assistant | $100 | $100 |
| Janet Stowell | Legal Assistant | $35-60 | $35-60 |
| Logan Joseph | Law Clerk | $50 | $50 |
| Anthony Reiner | Attorney | $375 | $150 |

Lauersdorf Decl. [267], Ex. 8b at 173; Bonaparte Decl. [268] at 8; Joseph Decl. [269]. The Mullers argue the hourly rates of their attorneys are reasonable, based on the Oregon State Bar 2012 Economic Survey, opinions from other attorneys in the area, and the opinions of the

14 – OPINION AND ORDER

attorneys involved in this case. Motion [266] at 8–9. Country Mutual specifically objects to the requested rates for Mr. Lauersdorf, Mr. Maloney, and Mr. MacLaren. I address each of these requested rates and Country Mutual's objections below.

### a. Robert Bonaparte

Mr. Bonaparte has thirty-five years of private practice experience, has expertise in insurance coverage cases, and is licensed to practice in Oregon, New York, and the District of Columbia. Bonaparte Decl. [267], Ex. B, at 1. His current hourly rates range from $375 to $450/hour. Bonaparte Decl. [267], Ex. B, at 1. It is not entirely clear what his requested hourly rate is: in the Motion for Attorney Fees, the Mullers request $375/hour through August 2015, and $450/hour after August 2015 for Mr. Bonaparte's work, but Mr. Bonaparte's declaration appears to calculate his requested fees based on a $450/hour rate for the entire time. Motion [266] at 8; Bonaparte Decl. [268] at 8. In support of this hourly rate, the Mullers submit an affidavit from Mr. Bonaparte and an expert declaration. The Mullers' attorney fees expert, James T. McDermott, submits that Mr. Bonaparte's requested hourly rate is reasonable based on his experience and skill. McDermott Decl. [271] at 6. ("Based primarily on Mr. Bonaparte's longstanding expertise, reputation, experience, and skill in litigating insurance coverage cases, I opine that his requested hourly rate of $450 is reasonable."). Country Mutual does not appear to object to Mr. Bonaparte's requested hourly rates.[5]

But I find a rate of $375/hour for Mr. Bonaparte's work in this case to be reasonable. The 2012 OSB Survey lists an average salary of $340 for attorneys in the Portland area with over 30

---

[5] Country Mutual's Response states "Despite Judge Brown's order, Plaintiffs again request $375/hour through August 2015 and $450/hour after August 2015 for Attorneys Bonaparte, Lauersdorf, and Maloney." Response [284] at 6. Judge Brown's order did not address Mr. Bonaparte's work or hourly rates, so Country Mutual's implication is unclear. *See* [266].

years of experience. OSB 2012 Economic Survey,

https://www.osbar.org/_docs/resources/econsurveys/12economicsurvey.pdf. Mr. Bonaparte

states that he charges $375-$450/hour. Bonaparte Decl. [267]. The requested hourly rate of $375

would put Mr. Bonaparte above the average hourly rate for attorneys in Portland, and his

$450/hour requested rate exceeds the 75th percentile ($400/hour) for attorneys in Portland with

similar experience. *Id.*; *see Prison Legal News*, 2013 WL 2156471, at \*4 (stating this court

usually limits rates to the 75th percentile of the OSB Survey, even where justified). For these

reasons, I find a $375 hourly rate to be reasonable for Mr. Bonaparte's work in this case.

## b. Andrew Lauersdorf, Francis J. Moloney, and Scott MacLaren.

Mr. Lauersdorf was admitted to the Oregon State Bar in 1995 and has approximately 16

years of experience litigating insurance coverage disputes; Mr. Maloney was admitted to the

Oregon State Bar in 1998 and has approximately 17 years of experience litigating insurance

coverage disputes; and Mr. MacLaren was admitted to the Oregon State Bar in 2012 and has

approximately five years of experience. Lauersdorf Decl. [267] at 3, 5, 7. The Mullers request

rates of $375/hour through August 2015, and $450/hour after August 2015 for Mr. Lauersdorf

and Mr. Maloney, and $185/hour through August 2015, and $250/hour after August 2015 for Mr.

MacLaren. Motion [266] at 8. The Mullers' expert opines that these are reasonable rates for

attorneys with comparable experience and skills. McDermott Decl. [271] at 4, 7.

In September 2016, Judge Brown addressed similar requested rates for these three

attorneys in this case and found reasonable $350 as an hourly rate for Lauersdorf and Maloney,

and $210 as an hourly rate for MacLaren. Opinion & Order [91] at 8–9. The Mullers argue Judge

Brown's decision did not take into account an anomaly in the OSB Survey rates that reflects

lower rates for attorneys with 16-20 years of experience than for attorneys with 7–15 years of

experience. Motion [266] at 8. But Judge Brown awarded fees higher than the averages listed in the 2012 OSB Survey, which lists an average salary of $312 for attorneys in the Portland area with 13–15 years experience, $256 for those with 16–20 years experience, and $326 for those with 21–30 years experience. OSB 2012 Economic Survey. I conclude the rates Judge Brown awarded are reasonable for attorneys with this many years of experience and in this particular case, and I also find reasonable hourly rates of $350 for Mr. Lauersdorf and Mr. Maloney, $210 for Mr. MacLaren after August 2015 (and Mr. MacLaren's requested rate of $185 prior to August 2015).

### c. Janis C. Puracal

Ms. Puracal was admitted to the Oregon State Bar in 2013, but worked in Washington prior to her work in Oregon and has approximately ten years of experience. Lauersdorf Decl. [267] at 7-8. She specializes in appellate work and the Mullers hired her when Country Mutual first alerted the Court it planned to appeal. Lauersdorf Decl. [267] at 9. The Mullers request rates of $275/hour through August 2015, and $300/hour after August 2015 for Ms. Puracal. Motion [266] at 8. The Mullers' expert opines that these are reasonable rates for an attorney with comparable experience and skills. McDermott Decl. [271] at 4, 7.

I find an hourly rate of $275 to be reasonable for Ms. Puracal . The 2012 OSB Survey lists an average salary of $258 for attorneys in the Portland area with 7-9 years experience, and $280 for attorneys with 10-12 years of experience. OSB 2012 Economic Survey. Ms. Puracal's requested rate of $300 would put her above the 75th percentile of hourly rates for attorneys with 7-9 years of experience (which she would have had for most of this litigation). *Id*; *see Prison Legal News*, 2013 WL 2156471, at *4.

#### d. Jonel Ricker

Mr. Ricker (who is now deceased) worked on this case from 2013-2014. He had been a member of the Oregon State Bar since 1979, worked in La Grande, and had approximately 34 years of experience at the time he worked on this case. Joseph Decl. [269], Ex. B. The Mullers request $210/hour for Mr. Ricker's work in 2013, and $225/hour for his 2014 work. Joseph Decl. [269] at 2. These rates are roughly in line with the average rates listed in the 2012 OSB Survey for an attorney with 30 or more years of experience in Eastern Oregon ($217/hour), and well below the $340/hour average rate for an attorney in Portland. OSB 2012 Economic Survey. Country Mutual does not object to these rates, and I find Mr. Ricker's requested hourly rates to be reasonable.

#### e. Brooke Calcagno

Ms. Calcagno has fourteen years of experience as a complex litigation legal assistant and paralegal, and has a Bachelor of Fine Arts from Southern Oregon University. Bonaparte Decl. [268]. The Mullers request $120/hour prior to August 2015, and $150/hour after August 2015, for Ms. Calcagno's work. Bonaparte Decl. [268] at 8.

"Although the OSB Economic Surveys contain no information regarding paralegal billing rates, Judges in this District have noted that a reasonable hourly rate for a paralegal should not exceed that of a first year associate." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1248. The average hourly rate for an attorney with 0-3 years of experience in Portland is $182, according to the 2012 OSB Survey. OSB 2012 Economic Survey.

I grant Ms. Calcagno a $120/hour rate for the entire time. I do not find reasonable the requested $150/hour rate, because it is unclear from the record whether Ms. Calcagno has a paralegal certification, or how long she has been a paralegal rather than a legal assistant. And as

this court has stated, "recent decisions have awarded much lower hourly rates for paralegal time, with many awards in the $100 to $125 per hour range." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1249 (citing cases and granting an award of $125/hour where a paralegal had a certification and over 10 years of experience as a paralegal).

### f. Cher Vasquez, Katie Welsh, Nadya Okamoto, Isabelle Zheng, Robin Lister, Janet Stowell, and Logan Joseph.

Cher Vasquez, Katie Welsh, Nadya Okamoto, Isabelle Zheng, Robin Lister, Janet Stowell, and Logan Joseph are paralegals, legal assistants, and law clerks at the three law firms in this case. Lauersdorf Decl. [267], Ex. 8b at 173; Bonaparte Decl. [268] at 8; Joseph Decl. [269] at 2. The Mullers ask for hourly rates ranging from $50 to $150 for the work of these seven individuals, but put forth no evidence of their backgrounds, skills, or reasonable hourly rates. *See, e.g.*, Lauersdorf Decl. [267], Ex. 8b at 173; Bonaparte Decl. [268] at 8; Joseph Decl. [269]. This court has previously awarded $50 per hour for paralegals and assistants where there was no evidence of their experience or skills. *See, e.g.*, *Precision Seed Cleaners*, 976 F. Supp. 2d at 1249; *Sterling Sav. Bank v. Derek L. Brown & Assocs., Inc.*, No. 03:10–cv–00674–BR, 2013 WL 164424, at *4 (D. Or. Jan. 15, 2013). I therefore find reasonable an hourly rate of $50/hour for Vasquez, Walsh, Okamoto, Zheng, Lister, Stowell, and Joseph.

### g. Anthony Reiner

As discussed above, there is no evidence in the record as to Mr. Reiner's qualifications, the Mullers do not request attorney fees for his work in their Motion, and I grant no fees for the 8.5 billed hours he worked on this case.

### 3. Fees for experts

The Mullers request $8,000 for the work of attorney fee experts. Motion [266] at 14.

Oregon law allows "fees for services provided in conjunction with the recovery of the underlying

fees," including expert fees. *Emerald People's Util. Dist. v. Pacificorp*, 801 P.2d 141, 143 (Or.

1990); *see Van Valkenburg v. Or. Dep't of Corr.*, No. 3:14-cv-00916-MO, 2017 WL 532950, at

*23 (D. Or., June 9, 2017) (allowing expert fees in conjunction with a "fees on fees" petition). I

therefore grant the Mullers' request for expert fees. However, because their expert James T.

McDermott stated, "I expect to charge plaintiffs' counsel a total of approximately $4,000-$5,000

for my expert work in this case" and their expert David B. Markowitz charged $3,000, I award

the lower amount of $7,000. McDermott Decl [271] at 2; Markowitz Decl. [270] at 5.

In sum, I grant $916,081 in fees prior to the filing of the attorney fees motion, which

includes a 15% reduction to account for duplication and excessive hours, and $7,000 in expert

fees.

## 4. Supplemental fees (see Appendix B)

After the Motion for Attorney Fees was filed, the Mullers' counsel billed 95.8 hours of

work on settlement negotiations, the response to the Motion for New Trial, and the reply to the

attorney fees motion.[6] Lauersdorf Decl. [292], Ex. 1 at 5; Bonaparte Decl. [293], Ex. 2. The

Mullers did not apply a 15% reduction to these requested fees. Although these records reveal

issues with duplication and intra-office conferences, the Mullers addressed many of these issues

by noting "no charge" hours for the hours of Maloney's work that overlapped with Bonaparte's

and Lauersdorf's work. I saw no administrative-work hours in my review. 95.8 hours still seems

to be an excessive amount of time spent on these motions, and I impose a 15% reduction on the

requested fees to ensure these hours are consistent with the rest of the fee petition. *See Schwarz*

---

[6] I calculate this number based on the hours documented in the accompanying Declarations, because the Reply brief is not entirely clear on the amount the Mullers are asking for, and Lauersdorf acknowledges he accidentally doublecounted the hours on August 3, 2017.

*v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 909 (9th Cir. 1995) ("[W]e have held that a district court does not abuse its discretion by applying the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award." I therefore grant $26,913.13 in supplemental fees.

### 5. The Mullers' request for a multiplier

The Mullers request a 2.0 multiplier, based on the "nature of the case and the conduct of Country [Mutual] and its attorneys." Motion [266] at 14. The Mullers cite to two other cases in which the court awarded a multiplier against defendants who employed Country Mutual's current attorneys, *Beck v. Metro. Prop. & Cas. Ins. Co.*, 2016 WL 4978411, and *Price v. Country Preferred Ins. Co.*, Union County Circuit Court, Case No. 11-08-47250. Motion [266] at 14. Country Mutual distinguishes *Beck* and *Price*, noting that *Beck* only involved a value dispute and that the defendants in *Price* refused to engage in settlement discussions. Response [284] at 12.

"Oregon law permits an enhancement of fees when it is supported by the facts and circumstances of the case." *Beck*, 2016 WL 4978411, at *22. An enhanced fee award may be appropriate where the recovery was an "exceptional success," and other favorable factors exist, including "the difficulty and complexity of the issues involved in this case, the value of the interests at stake, as well as the skill and professional standing of lawyers involved." *Strunk v. Pub. Empls. Ret. Bd.*, 169 P.3d 1242, 1254 (Or. 2007). The Mullers argue for a multiplier based on the conduct of Country Mutual and its attorneys. As discussed above, I think Country Mutual's conduct was generally permissible, and I do not grant a multiplier in this case.

### III. Costs

28 U.S.C. § 1920 allows federal courts to award costs for filing and docketing, "transcripts necessarily obtained for use in the case," witnesses, and copies. 28 U.S.C. § 1920. 28

U.S.C. § 1821 dictates how witnesses may be paid. 28 U.S.C. § 1821. Federal Rule of Civil Procedure 54(d)(1) "creates a presumption in favor of awarding costs to the prevailing party." *Beck*, 2016 WL 4978411, at \*24 (D. Or. Sept. 16, 2016) (citing *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc)).

The Mullers seek $31,076.29[7] in costs for the filing fee, process servers, deposition transcripts, transcripts of court proceedings, witness fees, printing and copying costs, legal research, postage, delivery charges, and long-distance phone calls. Motion [266] at 15; [267-11, 267-12, 269]. Costs are allowed for each of these categories. *See* 28 U.S.C. § 1920 (filing fees, necessary transcripts, witness fees, and copies); 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance."); 28 U.S.C. § 1821(c)(2) (providing for a "travel allowance equal to the mileage allowance" paid to federal employees for witnesses); *Schmitt v. VAG Group, Inc.*, No. 03:09–cv–00380–HU, 2010 WL 3732980, at \*6 (D. Or. Aug. 12, 2010) (describing postage and legal research fees as costs).

Country Mutual objects to $2,133 in costs incurred to obtain transcripts of depositions and for a transcript of a Rule 16 conference with Judge Brown. Response [284] at 12. "Deposition costs are taxable if they are reasonably necessary for trial." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998). "A deposition need not be absolutely indispensable to justify an award of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary disposition." *Frederick v. City of Portland*, 162 F.R.D. 139, 143 (D. Or. 1995). "The cost of a deposition not used at trial may be taxed if taking the deposition was reasonable as part of the pretrial preparation of the case, rather than merely discovery for the

---

[7] In Laudersdorf's supplemental declaration, the Mullers note $302.30 in costs for unexplained copying and postage, and parking fees at trial. Because these costs are not mentioned in their Reply brief, I do not include them here.

convenience of counsel, or if the deposition was required for a dispositive motion." *Arboireau v. Adidas Salomon AG*, No. CV-01-105-ST, 2002 WL 31466564, at \*5 (D. Or. June 14, 2002). But "[d]isallowance for expenses of depositions not used at trial is within the district court's discretion." *Wash. State Dep't of Transp. v. Wash. Nat. Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995).

Here, Country Mutual objects to costs for the deposition transcripts of: (1) Drew Lucurell; (2) Heather Connell; (3) Jeff Frenette; (4) Nicholas Flynn; (5) Scott Goff; and (6) Zoysha Halstead. Although neither party argues in detail about why these costs should or should not be allowed, each of these depositions were "reasonably necessary" for trial or dispositive motions. The Mullers submitted excerpts from the depositions of Jeff Frenette and Nicolas Flynn in their Partial Motion for Summary Judgment [104, 105, 115]. Frenette, Flynn, Zoysha Halstead (under the name Helen), and Scott Goff testified at trial. [243]. The Mullers originally planned to have Heather Connell testify at trial about the Plaintiffs' prior fires and insurance claims. Joint Witness List [180]. And Lucurell was an adjuster who worked on the Mullers' claims. I therefore allow the Mullers costs for the deposition transcripts.

The parties also do not make detailed arguments about the Rule 16 conference transcript, bu it includes details about court rulings regarding the timing and substance of certain dispositive motions, and I allow the Mullers costs for this transcript.

After reviewing the documents submitted by the Mullers, I conclude they have sufficiently accounted for most costs, with one exception. Some of the Muller's copying costs are not sufficiently explained in their affidavits. "Copying costs for documents produced to opposing parties in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable. . . . A party's conclusory assertion that all copies were

23 – OPINION AND ORDER

reasonably necessary to its case is, by itself, insufficient." *Beck,* 2016 WL 4978411, at \*26. The Mullers account for the majority of their copying costs as related to copies for Country Mutual, the Court, or for trial. *See* [267-11, 267-12]. But there is $167.38 in copying costs listed without an explanation, Joseph Decl. [269] at 2, and I deduct these costs from the overall bill. In summary, I grant the Mullers $30,908.91 in costs.

## IV. Conclusion

For the reasons stated above, I GRANT in part and DENY in part the Mullers' Motion for Attorney Fees [266]. I grant $1,367,466.44 in attorney fees, $7,000 in expert fees, $8,491 as previously awarded by Judge Brown, and $30,908.91 in costs, as shown in Appendix A to this opinion.

IT IS SO ORDERED.
DATED this ___ 8 ___ day of December, 2017.

MICHAEL W. MOSMAN
Chief United States District Judge

24 – OPINION AND ORDER

## Appendix A: Final Calculation of All Fees and Costs

|  | Requested | Awarded |
|---|---|---|
| Prejudgment interest | $428,290.63 (plus additional fees after motion was filed) | $386,563.40 |
| Attorney Fees | $1,175,568.49 | $916,081 |
| Fees Post Fee Motion | $31,146.25 | $26,913.13 |
| *Multiplier* | *x 2* | None |
| Cost Bill | $31,076.29 | $30,908.91 |
| Attorney fee experts | $8,000 | $7,000 |
| **Total** | **$2,884,796.40** | **$1,367,466.44** |
| **Judge Brown award** |  | **$8,491** |
| **Judgment amount** |  | **$1,375,957.44** |

# Appendix B: Final Calculations of Fees

| Name | Position | Rate | Hours requested | Total deductions | Final hours | Total | Less 15% deduction |
|---|---|---|---|---|---|---|---|
| Robert Bonaparte | Attorney | $375 | 646.4 | 5.2 | 641.2 | $240,450 | $204,383 |
| Andrew C. Lauersdorf | Attorney | $350 | 1283.1 | 21.9 | 1261.2 | $441,420 | $375,207 |
| Francis J. Maloney | Attorney | $350 | 567.5 | 23.2 | 544.3 | $190,505 | $161,929 |
| Janis C. Puracal | Attorney | $275 | 159.7 | | 159.7 | $43,918 | $37,330 |
| Scott MacLaren | Attorney | $185 | 22.2 | | 22.2 | $4,107 | $3,491 |
| Scott MacLaren | Attorney | $210 | 580.9 | 18.7 | 562.2 | $118,062 | $100,353 |
| Scott MacLaren | Attorney (trial attendance) | $150 | 52.5 | 0 | 52.5 | $7,875 | $6,694 |
| Jonel Ricker | Attorney | $210 | 36.8 | 0 | 36.8 | $7,728 | $6,569 |
| Jonel Ricker | Attorney | $225 | 12.6 | 0.5 | 12.1 | $2,723 | $2,314 |
| Brooke Calcagno | Paralegal | $120 | 71 | 1.4 | 69.6 | $8,352 | $7,099 |
| Cher Vasquez | Paralegal | $50 | 139.15 | 0.1 | 139.05 | $6,953 | $5,910 |
| Katie Walsh | Paralegal | $50 | 18.1 | | 18.1 | $905 | $769 |
| Robin Lister | Legal Assistant | $50 | 12.6 | 10.8 | 1.8 | $90 | $76 |
| Nadya Okamoto | Legal Assistant | $50 | 63.2 | | 63.2 | $3,160 | $2,686 |
| Isabelle Zheng | Legal Assistant | $50 | 35.5 | 12 | 23.5 | $1,175 | $999 |
| Janet Stowell | Legal Assistant | $50 | 6.4 | 2 | 4.4 | $220 | $187 |

| Logan Joseph | Law Clerk | $50 | 2 | | 2 | $100 | $85 |
|---|---|---|---|---|---|---|---|
| **Anthony Reiner** | Attorney | 0 | 8.5 | 8.5 | 0 | $0 | $0 |
| | | | | | **Total** | $1,077,742 | **$916,081** |

## Appendix C: Supplemental Fees

| *Name* | *Position* | *Rate* | *Hours requested* | *Total* | *Less 15% deduction* |
|---|---|---|---|---|---|
| **Robert Bonaparte** | Attorney | $375 | 21.3 | $7,987.50 | $6,789.38 |
| **Andrew C. Lauersdorf** | Attorney | $350 | 42.5 | $14,875.00 | $12,643.75 |
| **Janis C. Puracal** | Attorney | $275 | 32 | $8,800.00 | $7,480.00 |
| | | | **Total** | $31,662.50 | **$26,913.13** |